# Matthew Kingman
## v.
## Patrick Harmon, Guardian, etc.

*Mortgages—Foreclosure—Interests of Minor Heirs—Estoppel—Wills.*

1. In proceedings to foreclose a mortgage executed under the approval of the County Court, conveying the property of minor heirs, they can question its validity.

2. The purchaser of incumbered lands is not estopped from denying the validity of a mortgage thereon merely because he prepared the petition to the County Court to procure leave to mortgage, and advised the mortgagee, though not as his attorney, that the loan contemplated would be a safe one.

3. In the case presented, the interest of the widow in the purchase money of the premises in question, due the estate of her deceased son, can not be reached in the foreclosure proceedings, upon the mortgages being declared void.

[Opinion filed May 25, 1889.]

Appeal from the Circuit Court of Peoria County; the Hon. T. W. Shaw, Judge, presiding.

The appellant, who was complainant in the court below, filed his bill in the Circuit Court April 21, 1886, against appellees, Patrick Harmon, guardian of William and Mary Boylon, minor heirs of William Boylon, deceased, and also against the said minors in person, and against Maria Boylon (formerly Webster), the widow of William Boylon, deceased, and Josiah Cratty, to foreclose two certain mortgages given by said Harmon, as guardian of said minors, and by said widow in her own right. The mortgages were the usual mortgages given to secure notes given for borrowed money. The first, dated February 26, 1880, was given to secure a note executed by said guardian for $2,000, payable to appellant, due in three years, with eight per cent. interest per annum, payable annually. The second mortgage, with like parties and given to secure the sum of $925, dated March 24, 1881, was due Feb-

ruary 26, 1883, with same interest, payable annually. Each mortgage debt was secured by said mortgages respectively on a certain quarter section of land situate in said Peoria county, owned by said William Boylon at the time of his death. The parties at present interested in the subject-matter of this suit and at the time of the decree in the County Court, were the complainant, Matthew Kingman, and the respondent, Josiah Cratty, by virtue of a warranty deed to the mortgaged land from William and Mary Boylon and said Maria Boylon, of date July 22, 1885, who claims to be the owner, and respondents, Mary Boylon (now Hays) and Maria Boylon (now Ryan) and William Boylon, who claim that said mortgages are void for the reasons set up in their various answers. Maria Boylon, *alias* Webster, *alias* Ryan, who executed the mortgage, was at the time interested in it, first as widow of William Boylon, deceased, and also as the owner of a one-sixth interest in the land in fee, as the heir of her son William Boylon, deceased, who died intestate and without issue in the year 1873, and subsequently to the death of his father, William Boylon, who died the latter part of December, 1866.

The record shows that Maria Boylon, the widow, refused to qualify as executrix, and requested, in writing, the County Court to appoint Charles Boylon sole executor of the will of William Boylon, deceased, which was done, and he acted as such from January, 1867, to January, 1869. Patrick Boylon was appointed guardian of Charles, William and Mary Boylon in January, 1868, and qualified and acted as such guardian until August 3, 1871, when he resigned and Patrick Harmon was appointed guardian of said minors and acted as such until March 3, 1886. The following are the provisions of the will of William Boylon, deceased:

"First. It is my will that all my just debts be paid. After paying my just debts, it is my will that, after reserving a sufficiency for my wife and children, the proceeds of the remainder of my personal property be placed at interest for the maintenance of my wife and children.

" Second. It is my will that all my real estate, consisting of the northeast ¼ of section 36, township 11 north, range

8. east of the 4th principal meridian, also twenty acres of timber land in said township, be reserved for my children and be divided equally among them when the youngest attains the age of twenty-one (21) years, subject to my wife's dower; and that the proceeds of said property, until that time, be placed at the disposal of the executors, to be used by them for the support of my wife and the support and education of my children; any surplus arising from the above to be used for the benefit of the heirs."

At the time of the decree in the court below the boy named William Boylon was deceased. The answers set up and question the right of Patrick Harmon, guardian, to mortgage the premises. 1st. That the will prohibited it. 2d. The money was not needed or used for the support and maintenance of the minors, but, on the contrary, was wasted in loaning it out to various persons, including John C. Yates, the county judge, and in buying real estate (lot in Peoria) and building a house on it, and in furnishing Maria Boylon large amounts of money to be used by her in the saloon and grocery business, and in payment of lawyer's fees and court costs in needless litigation growing out of the mismanagement of the estate— all of which appellant could have known if he had used due care—and various other charges and specifications showing there was no necessity of borrowing the money represented by the mortgages. Answer further avers that the application to borrow the money was not approved by the County Court, and that the mortgages, especially the last one, was not approved by the County Court, but by Judge Yates personally.

It appears that Mary Hays, William Boylon, by his conservator, Josiah Cratty, and Josiah Cratty, filed a cross-bill asking to have the mortgages removed as a cloud on the title.

Upon a hearing in the Circuit Court, the court found that the moneys loaned by the complainant, Kingman, to respondent, Patrick Harmon, guardian of Mary Boylon (now Hays), and William Boylon, who appears by conservator and guardian *ad litem* in this case, were not, nor any part of said loans for which the two mortgages sought to be foreclosed under the original bill herein were given, a proper charge against the

estate of said Mary Boylin or William Boylin aforesaid; and. the said mortgages are not valid as against the title of said Mary Boylon, now Hays, or William Boylon in and to said real estate, and the said bill as to them was dismissed for want of equity; and the court found that as to Roswell Bills and Josiah Cratty there was no equity, except as far as Cratty may have acquired title of defendant Maria Boylon, *alias* Webster, *alias* Ryan, in said real estate.

The court held the one-sixth interest of Maria Boylon subject to the mortgages and decreed foreclosure as to it, and he'd her personally liable for the last note which she personally signed; and as to the interest in said land acquired by Josiah Cratty from Mary Hays and William Boylon the mortgage was void.

Messrs. WILLIAM S. KELLOGG and JAMES A. CAMERON, for appellant.

It would appear that if the prior proceedings, under which leave to mortgage was obtained and the credit given, the money loaned and the mortgage executed, were in conformity with the statute, the court had jurisdiction and the mortgage itself could not be questioned on the ground that the court erred in the exercise of its legal discretion by entering the order for leave to the guardian to mortgage. The order to mortgage gave a vitality to the mortgage of which it could not be deprived.

This position is in harmony with the decision of Reid v. Morton, 119 Ill. 130, which holds also that the power of authorizing a guardian to sell his ward's real estate is not a judicial power but is a mere ministerial power, " which might have been given to the selectmen of each town, or the clerks or registers of the counties, it being a mere ministerial act." Yet the court say (119 Ill., p. 131):

" Irregularities and errors in the course of proceeding are insisted upon as invalidating the guardian's sale. It is certainly the well settled general rule, that when a court has jurisdiction of the subject-matter and of the parties to the litigation its judgments and decrees will be held valid when

questioned collaterally. And this court has many times applied the rule in the very case of this special statutory and extraordinary proceeding of a guardian's sale, which this is so much dwelt upon as being. Young v. Lorain, 11 Ill. 624; Mulford v. Stalzenback, 46 Ill. 303; Spring v. Kane, 86 Ill. 580.

" In Mulford v. Stalzenback it is said, in reference to such a sale, that it was sufficient for the purchaser to see there was an order of court for the sale of the land and made by a court having jurisdiction to make that order. The statute under which the proceeding was had, Sec. 10, Chap. 47 of Revised Statutes of 1845, empowered the court to order a sale of the real estate of the ward on application of the guardian by petition in writing, stating the facts, requiring publication of notice in a newspaper three weeks before the sitting of the court. There was here such a petition and publication of notice. * * * This gave the court jurisdiction."

In the case at bar, the court had jurisdiction by the filing of the petition for leave to mortgage. It had from time to time approved of the several reports of the guardian, and such approvals were adjudications, so far as his accounts were concerned, upon which the appellant had a right to rely. If, after having loaned his money on the strength of these adjudications and the order of the County Court made in a matter where it had undoubted jurisdiction, appellant is to be dismissed from a court of chancery without any redress, the statutory provision of a guardian's mortgage may well be considered a deception and a snare, to attempt to avail of which ought to be prohibited by penalties as severe as those imposed against the confidence game.

Believing that he had a right to rely upon the exercise of the discretion with which the law had invested the County Court, of saying when and to what extent the necessities of the wards rendered it proper that an order be entered granting the guardian leave to mortgage their real estate; and believing, also, that money invested on the faith of that order will be protected in a court of equity, on being told by the decree of the court below that his security is worthless, and that the

same should be canceled as a cloud on the title of the defend-
ant, Josiah Cratty, who planned and encouraged and advised
and devised the making and taking of the same, and individ-
ually received hundreds of dollars of the money so borrowed,
the appellant prosecutes this appeal and respectfully asks that
said decree be reversed.

Messrs. SHEEN & LOVETT and M. C. QUINN, for appellees.

" It is a general rule of 'the common law that the expenses
of the infant or the ward shall be kept within the income or
the produce of his estate, although the court of chancery or
other proper court has frequently, in cases of strong necessity,
ordered a portion of the principal to be appropriated in that
way; but in doing this they have always proceeded with great
caution and have only done it in urgent cases.  The induce-
ments for guardians to invent for their wards artificial wants
that they may reap an incidental benefit in the expenditure of
their estate, has admonished the courts to guard with a jealous
eye the estates of infants who are unable to protect them-
selves.  Without this, the ward would too often become the
victim of the guardian, and the most ample estate would, dur-
ing a protracted minority, become dissipated more to his
advantage than that of his ward.  Courts of equity exercise a
strict supervision over the expenditures of guardians, requiring
the application of the income of the estate to the support and
education of the ward; but they seldom sanction the use of the
principal, even for these purposes, unless a very clear case of
necessity is made out to the court so ordering.  Much stricter
still is the rule when a guardian breaks in upon the principal
without first obtaining an order of a proper court for him to
do so."  Davis v. Harkness, 1 Gilm. 173; Cummings v. Cum-
mings, 15 Ill. 33; Bond v. Lockwood, 33 Ill. 212; Eyre v.
Countess of Shaftsbury, Vol. 2, pt. 2, White & Tudor's
Equity Cases, p. 164.

While the mortgages are approved by John C. Yates,
county judge, they are not approved by the County Court,
as they should be to be valid.  Hughes et al. v. People, 111
Ill. 457; Field v. Herrick, 5 Ill. App. 54.

The County Court is a court of record, but there is no record of the approval of the mortgages. The entry upon one of them, and about the other, is not a record, and being signed by John C. Yates as county judge, is not the act of the court. McIntyre v. People, 103 Ill. 148; McFarland v. McFarland, 4 Ill. App. 157.

We concede that if a sufficient petition is filed, is acted upon by the court, and a decree in conformity with the petition is rendered, and a mortgage is made in conformity with the decree, the mortgage would be a mortgage, but without these prerequisites it would not; but if a mortgage is made by a guardian, when being foreclosed it must appear that complainant, who asks equity, is doing equity. Kingsbury v. Sperry, 119 Ill. 280.

LACEY, P. J. There are two questions presented to us for consideration in this case, one of law and one of fact.

The first is, can the heirs of William Boylon, deceased, who were minors at the time the mortgages were executed, be heard, in this proceeding to foreclose, in a collateral way, to dispute the validity of the mortgages in question, after having been executed by leave of the County Court? It is contended on the part of the complainant that neither they nor their grantee, Cratty, can dispute the validity of the mortgages for the supposed reason that the question is *res adjudicata.*

We are of opinion that this point of law is not well taken. On the contrary, we must hold that the approval of the County Court of the giving of the mortgages does not have the effect to make the mortgages absolutely valid and binding as against the heirs. We are also of the opinion that the heirs may question the right to execute the mortgages in this proceeding to foreclose, and are not estopped to do so. The approval of the loans by the judge under our statute was ministerial only, and in no way bound the heirs. The statute requires that the heirs be made parties to the proceeding to foreclose, and it is in that proceeding for the first time that they have an opportunity to contest the validity of the mort-

gage. Kingsbury v. Sperry, 119 Ill. 280, we think fully set-
tles this principle. It is said in that case by the court that
"The question is treated in argument as if an order giving
leave to a guardian to mortgage, and an order or decree
authorizing him to sell the land of his ward are essentially
the same in principle. This is plainly a misapprehension. By
the sale and confirmation the title of the ward passed abso-
lutely to the purchaser. Before this can be effected the court
is required to hear evidence as to the existence of certain facts
(see R. S. 1874, Secs. 28, 29, 30, *et seq.*, Chap. 64). We have
seen in the case of mortgaging no title passes until the decree
of foreclosure, sale and confirmation thereafter. No fact is to
be adjudicated before making the order. The power is given
to the guardian simply, by leave of the court, to perform the
ministerial act of borrowing money and executing mortgage.
It might have been vested in the guardian absolutely, without
consulting the court, or might have been vested in some other
individual. Cooley on Con. Lim., 98, 99, *et seq.* Judicial
power is only invoked when a foreclosure is sought, and then
we have seen the ward has all the rights that he claims that
he now has the right to assert." Thus it will be seen that the
heir has a right to test the validity of the mortgage when it
is sought to be foreclosed. See Kircher v. Beecher, 41 Ill.
179.

We will not go over and recite the evidence concerning the
administration of this estate by the guardian, as it would con-
sume much unnecessary time, but will content ourselves in
stating generally our conclusions. The mortgaged property
was worth about $8,000, and was farm land worth from $400
to $600 per year rental, and there came to the hands of Har-
mon the sum of $2,850 from the former guardian, and this
could have been readily loaned for eight per cent. interest per
annum. Inside the nine years all this money was spent, and
all the income also spent, and the property mortgaged inside
of two years for nearly $3,000. The guardian allowed the
county judge and Mrs. Boylon to spend the money as they
pleased. No order was ever asked for from the County Court
to make expenditures for the wards, but the guardian pro-

Kingman v. Harmon.

ceeded to use the money promiscuously for the widow for any purpose she desired. He built a house costing over $1,300 with the money, which the widow occupied, and also furnished large supplies to Mrs. Boylon to carry on business. No account was kept with Mrs. Boylon and the wards separately. The purpose of borrowing the money was illegitimate and fraudulent. We have no doubt that the guardian, if he had acted with prudence, could have·supplied the wards with all the assistance necessary, as also Mrs. Boylon, in accordance with the provisions of the will, out of the income, without at all, or at least very slightly, trenching on the estate.

The action of the guardian was reckless in the extreme, and appellant, if he had examined appellee's (Harmon's) official reports to the County Court, would have discovered it. He had no right to borrow money to invest with the widow, and to pay her debts to lawyers and others, as was done, or to invest in real estate. The guardian, in 1874 and 1875, built a house on a lot, the title of which was in his own name, which he held for the heirs and widow. All this was done without any authority of law, and was not sold till long after this money was borrowed, between April and July 1, 1885. This money should have been used before a resort to borrowing was had. It was illegal to borrow money to pay for supplies for Mrs. Boylon's saloon and boarding house, and an order should have been obtained from the County Court authorizing disbursements before the money was borrowed. Nothing of the kind was done. Bond v. Lockwood, 33 Ill. 212. The $2,000 was used in paying Cratty's attorney's fee of $400, and for his own debt for supplies furnished Mrs. Boylon, $525, and other like things.

The position assumed by appellant's counsel, that Cratty is estopped from denying the validity of the mortgage because he prepared the petition to the County Court, to procure leave to mortgage, and advised appellant that the guardian had a right to execute the mortgage, is not well taken.

Cratty was not, at the time, the attorney of appellant, and there is no evidence that he had any fraudulent intent to mislead the appellant. In addition, he was not, at the time, the

owner of the land. If any estoppel existed as to Cratty, it must have become operative at the time, otherwise, if he did any wrong by the advice given, he would have been simply liable in an action on the case for deceit, and he, by such advice, could not affect the title of the minors. As far as Cratty's action was concerned, the title of the minors was unclouded, and to allow it to become clouded upon a sale to Cratty would, in substance, deprive them of the right to sell to him, or embarrass the sale, which would be an injury to them, who were blameless. This the law would not allow. If the advice of Cratty amounted to anything, it was simply a liability to appellant and could have no place in this investigation. Again, the amount of appellant's mortgages are held in trust by Cratty for the interest of Mary Hays and the administrator of William Boylon, deceased, the other minor, and if he is estopped Cratty would not be the one to suffer.

It is also insisted that whatever money the widow will inherit of the money coming to William Boylon, deceased, in case the mortgages are defeated, should be allowed appellant. This position is not tenable. The interest of William in the purchase money due from Cratty goes to his administrator and not to his heirs, it being personal.

The widow's liability on the note she signed, and her warranty contained in the mortgages, if any, can not be satisfied by attaching her claim as heir against the administrator of her son William, deceased. Her personal liability on her covenants in no way creates a lien in appellant's favor in her interest as heir of her son's personal estate. It is not attachable in this proceeding. We hold that, under the evidence, the conveyance from William to Cratty of his interest in the land was valid, and no proof shows that he was not competent to execute the deed.

The appellees make the point, in addition to the ones noticed above, that in accordance with the provisions of the will of William Boylon, deceased, the guardian could not mortgage the land, as the land was not to come into possession of the heirs until they were twenty-one years of age. But from what we have above said it will appear that it is not necessary to pass upon that point.

Seeing no error in the record, the decree of the court below is affirmed.

*Decree affirmed.*

C. B. SMITH, J. I do not concur in the judgment of the majority of the court in this case. I hold that the proceedings in the County Court were had in strict conformity with the statute authorizing the guardian to borrow the money for the use of his wards, and the approval of the court of the loan before it was made is a full and complete protection to Kingman, who parted with his money on the strength of the order of the court and the advice of Cratty, who procured the order for Harmon through the County Court. The record in this case shows that Harmon, the guardian, complied strictly and in every respect with the requirement of the statute. The statute confers power on guardians to incumber the lands of their wards by mortgages (Secs. 24 and 25, Chap. 64, p. 1244, Starr & C., Ill. Stat), but that before such guardian can borrow money and mortgage the land of his wards the guardian shall first petition the County Court for an order authorizing such mortgage to be made. This was done, upon a sufficient petition, and the application was heard by the County Court, and after a full hearing the court made its order authorizing the guardian to make this loan. The court found all the facts necessary to be found to justify the judgment and the order of the court. The court had jurisdiction of the person and the subject-matter.

I am, therefore, of opinion that Kingman had a right to place implicit confidence in this record made by the County Court. He was under no obligations to determine for himself whether the loan was necessary to be made for the benefit of the wards. Nor was he bound to see to the application of the money by the guardian or County Court. He had no power or control over it. There is no proof in the record that he knew of any misconduct or misappropriation of the wards' money by the guardian, or of any conspiracy between the County Court and Harmon to waste the estate of these children. It may be conceded, and is undoubtedly true, that these

wards were most grievously robbed and plundered of their estate by the guardian, the county judge and their mother; but appellant had no knowledge nor any part in this waste and misappropriation of the children's estate. He is an innocent party. So long as the statute allows guardians to mortgage the estate of their wards there must be some authority to determine when the necessity arises for such incumbrance; but if minors are not bound by the action of such forum, and may come in twenty years, or any other time, after such mortgage is executed, after their necessities and infancy and witnesses have all disappeared, and defeat the mortgage by showing misconduct of the guardian, ignorance, or dishonesty, or both, of the court, and general waste of their estate by the guardian, and thus defeat the just claim of an honest mortgagee who loaned his money in good faith to the guardian on the strength of the order of the court, then, indeed, few men will be found who will advance their money on any such security. The judgment bound the minors or wards in this case. Mulford v. Stalzenback, 46 Ill. 303; Spring v. Kane, 86 Ill. 580.

I hold, also, that Cratty's conduct in this whole transaction, from beginning to end, estops him from denying the validity of these mortgages. The proof shows that it was through his advice and active affirmative agency and conduct that Kingman was induced to make this loan. Kingman was assured by him that the order authorizing the loan was valid and legal and that it was a good and safe loan. Through this advice Kingman loaned his money for the use and benefit of those wards, and yet Cratty, well knowing what the money was loaned for, receives $450 of the money for fees for legal services, which were not rendered for these children. He knew he had no right to that money out of that fund, and that the guardian had no right to pay it to him, nor to any other person for his use. After thus inducing Kingman to loan his money on the strength of what he then said was a legal order, and after himself receiving a large sum of the money, he now assumes a different attitude directly inconsistent with his former position. He has himself become a purchaser

of the mortgaged premises, and without having paid the grantors for the same the amount represented by the mortgages, he now is insisting that the order of the court is not valid, and that it affords Kingman no protection. His position now is hostile and directly antagonistic to the one he occupied when he advised Kingman the order of the court was valid and the loan a safe one. He now insists that he shall be permitted to further profit by this transaction in the sum of $3,000 and hold the land discharged of the mortgages.

I hold that under the plainest rules of equity and fair dealing he ought to be estopped from assuming a different attitude from that he occupied when he induced Kingman to part with his money.

For the reasons above, very briefly given, I hold that the decree of the Circuit Court is erroneous and unjust in the extreme and ought to be reversed.