The People of the State of Illinois, for use of Vincent Gabolis, Appellee, v. Michael Broda and Montezas Marozas, Appellants.

## Gen. No. 24,711.

1. GUARDIAN AND WARD, § 99*—*when error, in action on guardian's bond, to exclude evidence of money spent for support of ward.* In an action on a guardian's bond to recover money alleged to have been converted by the guardian, who was the ward's mother, it was error to refuse to admit evidence as to money spent by the mother in the support of her ward, outside of that paid by order of the Probate Court.

2. GUARDIAN AND WARD, § 16*—*when guardian may expend money for necessaries without order of court.* The credit to be given a guardian is not determined by any fixed rigorous standards, but by what is reasonable and equitable; and it is not necessary to obtain an order of court for leave to expend money for the necessaries of the ward, but the County Court should allow them when proven reasonable.

3. GUARDIAN AND WARD, § 31*—*when ward may become indebted to guardian.* A ward may become indebted to her guardian for necessaries as well as to a stranger.

Appeal from the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded. Opinion filed October 15, 1919.

OTTO H. BEUTLER, for appellants.

No appearance for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is a suit brought by the plaintiff against the defendants as sureties on a guardian's bond.

On August 31, 1909, one Marianna Gabolis was appointed guardian of the estate of her son, Vincent Gabolis. As guardian she gave a bond, signed by the defendants as sureties, by which they bound themselves in the sum of $600 subject to the condition that if Marianna Gabolis should faithfully discharge the office and trust of guardian of the estate of Vincent Gabolis according to law then it should be void and otherwise should remain in full force and virtue.

On February 13, 1918, the plaintiff filed a statement of claim alleging, among other things, that Marianna Gabolis as guardian received $266.66 which she converted to her own use and that as a result the plaintiff, as against the defendants as sureties on her bond as guardian, is entitled to damages in the sum of $600. On March 7, 1918, the defendants filed an affidavit of merits in which they admitted that Marianna Gabolis was appointed guardian of the estate of Vincent Gabolis; that the Probate Court approved the bond; that they, the defendants, executed said bond as sureties; that Marianna Gabolis died on or about November 13, 1915. They denied, however, that she received $266.66 as guardian of Vincent Gabolis, and alleged that whatever sum she received as guardian she paid out for the support, maintenance and education of the said ward.

The evidence shows the following: Vincent Gabolis, the ward, was born in Kartvno, Russia. He began doing farm work when he was 9 years old and received 9 rubles a year. As he grew older his wages increased to 45 rubles a year. He came to this country in November, 1913, when he was 18 years of age, and lived with his mother and stepfather. En route from Russia he stayed a week in New York; at that time he

received $25 from his mother.  His testimony is that 2 weeks after he landed he went to work, in Chicago, for Armour & Company and worked there for about a year; that he gave his pay to his mother for his board and lodging; that after he left Armour & Company he worked for Morris & Company in a tin shop; that he worked there until his mother died in November, 1915; that then he went back to Armour & Company; that while his mother was living and he was working, his wages amounted to from $10 to $12 a week, all of which he gave to his mother with the exception of a few dollars which he kept for himself.

Alexander Banacza, who married Marianna Gabolis on September 27, 1910, and lived with her as her second husband until she died, November 13, 1915, testified that Vincent Gabolis lived with them until his mother died; that during the 2 years that Vincent Gabolis lived with them he worked only one month; that his mother furnished him with board, lodging and clothing during those 2 years; that his mother spent $90 for the steamship and railroad ticket used by Vincent Gabolis in coming from Russia to America; that she sent him $25 to New York.  He further testified that when she died her total estate consisted of $100 in the bank, and that that was taken by the undertaker.  In rebuttal, Vincent Gabolis testified that he never received the $90 or a steamship ticket from his mother; that he bought his ticket with his own money; that he did receive $25 when he was in New York but paid it back to his mother after he came to Chicago and started to work.

The final report of John F. Devine, administrator of the estate of John Gabolis, deceased, was offered in evidence showing that, as the result of a claim for damages against Armour & Company for causing the death of John Gabolis, he received, as administrator, from Armour & Company in settlement of the claim for damages the sum of $556; that he paid out as

court costs, stenographers' and attorneys' fees, $126; that he had retained $30 as his commission, and had paid to Marianna Gabolis as widow $133.34, and to her as guardian of Vincent Gabolis, $133.33. That report was approved by the Probate Court on May 30, 1910. At the close of the evidence the trial judge entered judgment for the plaintiff in the sum of $600 in debt, and the sum of $202 damages together with costs. The sum of $202 was reached by adding compound interest to the sum of $133, the latter being the amount paid to the guardian for the benefit of her ward, Vincent Gabolis.

It is claimed by counsel for the appellants that the trial judge erred in refusing to admit evidence as to any money spent by the mother on her ward, outside of that which she paid out by order of the Probate Court. The trial judge stated his conception of the law in the following question: "As a legal proposition is it not true that that rests upon the mother, that duty to clothe the child, and if a mother wants to pay out money that is in her hands as guardian she must do it by order of the Probate Court?" And when counsel for the appellants stated to the court that "he ought to be allowed to go into the question as to what the reasonable care and board and lodging was worth during the first two years after he came to this country," the trial judge ruled that that was objectionable.

We are of the opinion that the court erred in refusing to admit, on the part of the appellants, evidence going to show what money, if any, she spent, for the reasonable support of her ward during her guardianship. It is the contention of the appellants that the ward from the time he came to this country, when he was 18 years of age, until the death of his mother, 2 years later, did not work to exceed one month; and that during the 2 years he both boarded and lodged with his mother and stepfather, and that they fur-

nished him also with clothing; that instead of helping his mother as he might have done he in fact received his board, lodging and clothing for nothing, although the family was obviously in poor circumstances and the ward was of such an age that he could easily have supported himself.

In *Bond v. Lockwood*, 33 Ill. 212, a case in which the guardian was the stepfather of minors, and was undertaking to charge the estate of the minors with the cost of their board and clothing, the court used the following language:

"A guardian may support his ward without any order of court, and all payments which he can show were necessary for that purpose will be allowed to him. Any one in possession of the ward's property, or a stranger, may do it and have a like allowance, but such allowance will only be made upon proof, showing the necessity of the expenditure and for what it was made. A minor has power to contract for necessaries, and we see no reason why he may not become indebted to his guardian for them as well as to a stranger. * * * The appellee (who was the stepfather and guardian of the minor) was not required by law to board the children of his wife by a former marriage without compensation, nor was his wife obliged so to do."

In *Seago v. People*, 21 Ill. App. 283, where a suit was brought on a bond given for the mother as guardian of minor children, the following language was used:

"We think the court erred in excluding from the jury the report made by Mrs. Foyles on the 12th of January, 1884. It tended to show that originally the mother intended to charge her daughter Luella for board at the rate of fifty cents per week, and if such was her intention and she actually furnished her daughter with such board, at reasonable prices, it would have been *pro tanto* a payment to her daughter of which the sureties upon her bond could avail themselves, notwithstanding the mother might afterwards

desire to be charged with it solely for the purpose of enabling her daughter to recover from the sureties.''

It is obvious, from the decisions pertinent to the subject-matter of this appeal, that the credit to be given a guardian is not determined by any fixed rigorous standards but by what is reasonable and equitable. As to the intimation of the trial judge, that money can be paid out by the guardian only pursuant to an order of the court, it is stated in *Stout v. Wood*, 59 Ill. App. 122, that ''it is not necessary to obtain an order of court for leave to expend money for the necessaries of the ward, but the County Court should allow them when proven reasonable. Defendant in error could become 'indebted to her guardian for necessaries as well as to a stranger.' '' *Miller v. Lindemann*, 206 Ill. App. 130. It follows, therefore, that all proffered evidence tending in any way to show whatever may have been furnished to the ward by the guardian in the way of money, board, lodging and clothing was competent, in order that all proper charges against the estate on behalf of the guardian might be determined, and credit given therefor.

In view of the errors in the rejection of evidence, the judgment is reversed and remanded.

*Reversed and remanded.*