JOHN H. CUMMINS, Plaintiff in Error, v. JOHN D. CUMMINS, Defendant in Error.

ERROR TO SALINE.

Where a testator appointed a person, permanently residing in another State,
· guardian for his children, it will be inferred that he expected the guardian
would remove the children to that State. And the expense of removing the
children will be a proper charge against the estate.

Although it is generally necessary that an order should be obtained from the
probate court, before expenditures should be made for wards, yet the rule
may be deviated from, under extraordinary circumstances.

THE facts of this case are as follows : Thomas D. Cummins, father of plaintiff in error, died in October, 1834, leaving complainant and two sisters, his children. By his will he appointed H. Hargrave his executor; directed his personal and real estate to be sold by the executor, and the proceeds, after paying debts and a specific legacy, to be paid to John Siddell, who was directed to pay it to John D. Cummins, the defendant, for the use of plaintiff and his two sisters, when they became of age. Hargrave made a settlement in the probate court, showing $675 in his hands, but is not shown to have paid over anything to Siddell. In 1840, a suit was brought against him in Siddell's name, and a judgment recovered for $418. Land was afterwards bid off on this judgment for $427, in the name of Henry Eddy, the attorney ; and in November, 1843, the certificate of purchase was assigned by Eddy to defendant, and he took a deed to the land. This is all that is shown to have come to defendant's hands.

On his death-bed Thomas D. Cummins requested his executor to write to defendant, who then lived in Indiana, to come and get the children. Defendant came early in November, 1834, —took the children, (then aged about two and a half, five and a half, and eight years respectively), home with him—bought clothing for them before removing them to Indiana—kept them all for several months, and plaintiff over three years— paid in attorney's fees and costs of court, over $55, before he could obtain the certificate of purchase. Not a cent came to

his hands for over nine years from the time he took the children. Plaintiff filed a bill to compel defendant to account. Defendant admits assets to the value of land, $427, and sets up as a defense the amount paid out for said children. The Circuit Court decreed that defendant should pay the further sum of $82, and from that decree complainant appeals to this court, insisting that defendant is not entitled to any deduction for amounts paid out by him.

J. M. WARREN, for Plaintiff in Error.

Courts of equity exercise a strict supervision over the expenditures of guardians, requiring the application of the income of the estate to the support and education of the wards, to be satisfactorily shown, so far as needed for that purpose, and the surplus, if any, to be kept productive. They seldom sanction the use of the principal even for these purposes, unless a very clear case of necessity is made out for so doing. 2 Fonbl. Eq. 473 ; *Davis, Adm'r,* v. *Harkness et al.,* 1 Gilm. 177; *Davis et al.* v. *Roberts,* 1 S. & M. 553.

Much stricter is the rule when the guardian breaks in upon the principal, without first obtaining an order of a proper court authorizing him to do so. 1 Gilm. 177; *Cummins* v. *Cummins,* 15 Ill. 24.

S. S. MARSHALL, and E. BEECHER, for Defendant in Error.

Two questions arise on this record :
Had the guardian (complainant treats defendant as a testamentary guardian) any right to apply the principal of his wards' estate to their support?
If he had such right, could he do so without first obtaining an order of court, authorizing him so to apply it ?
Upon the first question we imagine there can be no dispute. The books are full of cases where such allowances have been made. It is true, it is not done unless the estate is small, and the interest insufficient for the support and education of the ward. Lord Thurlow once expressed an opinion against such allowances, (*Walker* v. *Wetherell,* 6 Vesey, Jun., 473); but

that decision has been since expressly and repeatedly over-ruled, and it is said he afterwards changed his opinion. The case of *Harvey* v. *Harvey*, 2 Peere Williams, 21, and *Ex parte Green*, 1 Jacob and Walker, 253, directly sustain us, and also the cases to which we shall hereafter refer in support of the second proposition.

It has been supposed our statute prohibits the use of the principal of an estate. The only limitation is, that the rents and profits arising from the ward's real estate shall be first used, and, next, the interest on money. There is no other prohibition against using any part of a ward's estate for his maintenance or education. Cooke's Stat., p. 551, sec. 9.

But the statute expressly provides that a guardian, having "faithfully applied all the personal estate," may sell the real estate "for the support and education of the ward." Cooke's Stat., p. 552, sec. 10.

We speak with equal confidence in favor of our second proposition. A reference to the authorities will satisfy the court of this fact. *Matter of Bostwick*, 4 Johns. Ch. R. 100; *Barlow* v. *Grant*, 1 Vernon, 254; *Clark* v. *Montgomery*, 23 Barbour S. C. R. 472; *Wilkes* v. *Rogers*, 6 Johns. 594; *Harring* v. *Coles*, 2 Bradford, 353; *Maupin* v. *Delaney's Devisees*, 5 Dana, 589; *Greenwell* v. *Greenwell*, 5 Vesey, Jun., 198, and notes.

And in this court the same is recognized as a rule in *Davis, Adm'r*, v. *Harkness et al.*, 1 Gilm. 179.

We admit, in its fullest extent, the doctrine that the conduct of the guardian ought to be watched by the courts, and that the ward's estate ought not to be broken in upon, except in case of urgent necessity; or in the words of Judge CATON, in *Davis* v. *Harkness*, 1 Gilm. 177, "When a strong necessity for the expenditure is shown, and a satisfactory reason given why a previous order was not obtained."

One other question remains to be disposed of—that is, has the guardian paid out as much or more than came to his hands?

In arriving at the amount expended, it is shown that he paid the widow (step-mother of plaintiff) $100, to induce her

to relinquish her claim to the lands. Witnesses swear that was an act highly beneficial to the estate ; and if so, and it was done in good faith, he is entitled to an allowance for it. *Eagle* v. *Emmett*, 4 Bradford, 125.

We can hardly imagine that objection will be taken to the guardian removing the children to Indiana, and charging for the expense. It was the last wish of a dying father ; and although not evidenced by writing, will be regarded by courts. *Foster* v. *Mott*, 3 Bradford, 409.

CATON, C. J. When the testator appointed the defendant guardian to his children, knowing that he resided permanently in Indiana, it may well be inferred that he expected that his brother would remove the children there. Without that, he could not expect that the guardian could take proper care of the wards. The expense of removing the children to Indiana, was a proper charge against the estate of the wards. The principal objection to the allowance for the expenditures for the maintenance of these wards is, that no previous order was obtained from the court of probate for such expenditures. Ordinarily, this should no doubt be deemed almost indispensable, and courts can hardly be too vigilant in scrutinizing the accounts of guardians for expenditures made without such order. But this case presents peculiar features. During the time of most if not all of these expenditures, the guardian had none of the wards' estate in his hands, nor indeed was there any strong probability that he would ever succeed in recovering anything for them. Nor did he finally succeed in doing so, till he had made considerable cash advances for that purpose. So long as he had no estate in his hands, out of which the court could order him to make expenditures for the wards, and no means from which he could raise funds for their use, it could hardly be expected that he should go to the expense of procuring an order from the court, directing him to expend his own money for their good. When we review the conduct of this guardian, in reference to his wards, as disclosed to us by the evidence, we find nothing to censure or disapprove. Whatever error there is in this decree, is in favor of the com-

plainant.  We do not think the testimony warranted the decree, which was rendered against the defendant.  At least, the complainant has no just ground of complaint, and the decree must be affirmed.

*Decree affirmed.*