EAST GREENWICH INSTITUTION FOR SAVINGS *vs.* MABEL A. SHIPPEE *et al.*

PROVIDENCE—JULY 20, 1898.

PRESENT : Stiness, Tillinghast and Rogers, JJ.

The strict English rule, formerly followed in this country, limited guardians to the use of the wards' income for their support and education, unless the proper court first sanctioned an expenditure in excess thereof; but our courts have since adopted the less rigid rule of ratifying expenditures for maintenance and education that would have been previously authorized from the principal of the estate, and of allowing credit to the guardian therefor upon settlement of his account.

A guardian can make no final account until his ward becomes of age, for until then the term is still running as to which the account is to be rendered.

A court in equity, having taken cognizance of a litigation, will dispose of every subject embraced within the circle of contest, whether of remedy or of connected topics of dispute.

Upon the settlement of the account of a guardian a balance was found due him from the ward's estate, and suggestion was made that there might be other creditors to share the fund representing the remaining estate :—

*Held*, that such fund was to be first applied to the payment of the guardian's balance.

BILL OF INTERPLEADER to determine the title to a fund remaining in the hands of a mortgagee after sale of the mortgaged property of a ward, the fund being claimed by the guardian as re-imbursement for a balance found due him from the ward's estate upon a previous settlement of his account, and also claimed by the ward who had become of age before sale of the mortgaged property.    Heard on pleadings and proofs.

ROGERS, J.    This is a bill of interpleader to determine to whom shall be paid the sum of $213.74, which is the surplus remaining in the mortgagee's hands after satisfying the mortgagee's claim out of the proceeds of a mortgagee's sale of certain real estate, and which sum is now in the registry of the court, less $25 allowed to the plaintiff for expenses of this suit, the sum now in the registry of the court awaiting further order being $188.74, with interest that may accrue.

Thaddeus Sprague and Sarah M. Sprague, his wife, were the parents of two children, the defendant Mabel A. Shippee and one Thaddeus Sprague.    The said Sarah M. Sprague, being seized and possessed of a certain lot of land, joined with her husband in a mortgage of the same to the plaintiff to secure the husband's promissory note for $100.    Before the payment of said mortgage note said parents died intestate, leaving said two children heirs of the said estate, encumbered as it was by said mortgage.    As both of said children were infants, the said defendant David L. Rose was appointed guardian of the persons and estates of said minors. The only estate of the wards coming under the control of the guardian was the land referred to in the bill and sold by the plaintiff as mortgagee under the power of sale contained in said mortgage.    The guardian filed his final account with the estate of his ward, the defendant Mabel A. Shippee, after she arrived at age, and on appeal to the Supreme Court it appeared that the guardian of the two wards, *i.. e.*, the defendant Mabel A. Shippee, and her brother, Thaddeus

Sprague, received $552, and expended on the estate $440.81, leaving a balance to the credit of the wards of $111.19, one-half of which, viz.: $55.59, belonged to the defendant Mabel A. Shippee's estate; that the said guardian, the defendant David L. Rose, had spent for her the sum of $166.32, leaving a balance due the said guardian of $110.73, adding probate charge, as allowed by the Supreme Court, of $17.88, made a balance expended for said Mabel A. Shippee by the guardian, over credits, of $128.61. In September, 1894, nearly a year after the said Mabel came of age, the guardian asked and obtained from the Probate Court of East Greenwich leave to sell the real estate of said wards, and though he filed his bond with sureties, as required by law, he never sold said real estate under said power, but the said estate having been sold by the mortgagee, under the power of sale contained in said mortgage, the said David L. Rose claims that the plaintiff and mortgagee, the said East Greenwich Institution for Savings, should pay the surplus in its hands to him, he being entitled, as guardian of Thaddeus Sprague, who is still a minor, to receive one-half of said surplus; and the other half of said surplus he claims to be entitled to receive as guardian of said Mabel A. Shippee, though now of age, that he may apply it towards the payment of the balance of expenditure made by him as guardian of the said Mabel.

The defendant Mabel A. Shippee claims that, being of age, she is the proper person to receive one-half of the surplus of the proceeds of the mortgagee's sale not required to pay the mortgage; that David L. Rose had no authority of law to expend for her more than the income of said estate, except upon leave first had and obtained from the proper tribunal; and that having expended more than the income, without such leave first having been obtained, he cannot now be allowed to re-imburse himself out of the proceeds of her real estate, however sold.

The counsel for the respondent Mabel A. Shippee further claims that, this being a suit of interpleader, questions like those sought to be raised here by the respondent David L. Rose are improper; that Mrs. Shippee being now of age,

should have one-half of said sum of $188.74, to wit, $94.37, paid to her, and then said Rose could bring against her such action or proceedings as he sees fit.

The plaintiff of record in this suit has paid the surplus in its hands, to which it makes no claim, into the registry of the court, less the amount allowed for expenses, and now has no more interest in the disposal of the fund than if it had never had anything to do with it.   There is no question made by anybody but that said Rose is still the guardian of Thaddeus Sprague, who continues to be a minor, and as such guardian is entitled to the custody of the $94.37 due said minor's estate.   The said Mabel A. Shippee is now, and for several years has been, of age and *sui juris*, has had notice of the pendency of this suit and is represented here by counsel who has been fully heard, and we can see no good reason, either technical or substantial, why the real question arising between Mrs. Shippee and her guardian (or former guardian, to use her counsel's phrase) should not be decided, and thus save a multiplicity of suits.

The respondent Shippee contends that there is no proof of indebtedness from her or her estate to the said David L. Rose as guardian, that the guardian's account allowed by the Court of Probate, or by this court on appeal therefrom, is no proof of indebtedness, but at most simply exonerates him from further liability to the ward's estate, and she relies largely on *Richards' Case*, 6 S. & R. 462, decided in 1821, and in which Gibson, J., uses the expression, " the guardian is to account with the ward, not the ward with the guardian." Several other cases, all resting upon *Richard's Case*, have been cited in support of that contention.   The Supreme Court of Pennsylvania, in 1853, in *Shollenberger's Appeal*, 21 Penn. St. 337, commented upon *Richards' Case*, and gave it a very different aspect from what it had assumed theretofore.   In *Shollenberger's Appeal* the question was whether a guardian, on the settlement of whose account in the Orphan's Court a balance in his favor was decreed, could, by the Orphan's Court Act of 1832, have a writ of *fieri facias* to collect the balance out of the ward's estate.   The court reversed the

decision of the lower court and granted the writ of *fieri facias* against the ward's estate, and in its opinion by Woodward, J., thus referred to *Richards' Case:* "Under the Acts of Assembly before 1821, it was decided in *Richards' Case*, 6 Ser. & R. 464, that the Orphan's Court had no power to decree a balance against a ward in favor of his guardian—that the guardian is to account with the ward and not the ward with the guardian—that the guardian cannot cite the ward to a settlement, but if he has advanced beyond what he has received, he may, if the expenditure were proper and fitting to the estate and condition of the ward, create a responsibility that would be enforced elsewhere. The reasons on which this ruling was rested were drawn from the inadequacy of the legislative provisions for notice to the ward, and it was considered to be going far enough to say the confirmation of the account shall discharge the guardian without directly involving the ward in personal liability. It does not appear from the report of the case how the guardian was brought to settlement, whether by citation, or his own desire to be discharged; nor whether he was guardian of the *estate* or of the *persons* of the minors, but his accounts presented to the Orphan's Court, were referred to auditors, who reported a balance due him from each of the children except one, amounting in the aggregate to $5,000. The court having dismissed the exceptions and confirmed the report, the wards offered to appeal to the Supreme Court, but the Orphan's Court refused to allow the appeal unless they gave security for the balances found against them. A rule was then obtained in this court to show cause why an appeal should not be allowed on giving security for *costs* only, and this was made absolute and the appeal entered. Thus it is apparent that the precise question ruled in *Richards' Case* was, whether wards might appeal to the Supreme Court from a decree of the Orphan's Court charging them with a balance due their guardian, without giving security for the balance. Entertaining great respect for the doctrine taught by the eminent judge who delivered the opinion, it is impossible to say the case is really authority for anything

more than the point ruled, and that does not touch the case before us."

The learned judge, after considering another case cited by counsel, proceeds in this wise: "The opinion in *Richards' Case* was grounded, as we have seen, on the inadequacy of legislative provisions for notice to the ward, an objection which as to its general application has been obviated by various provisions in the Act of 1832, and which can have no special application to the case before us, because here the guardian was the guardian of the estate, the ward was a married woman and of full age before the account was finally adjusted, and the guardian was brought to the settlement by citation sued out by the ward and her husband, who were before the auditors and in court to watch her interests and to see that justice was done to her. And that there was no failure of justice to the ward may be inferred from their acquiescence in a final decree in favor of the guardian without an attempt at appeal or review. These are the circumstances under which the question is directly presented, whether the Orphan's Court has power to enforce payment out of the ward's estate, of a balance found due to her guardian on a final settlement of his account; and there is nothing in the two cases already noticed which can be regarded as decisive of this question."

The learned court then goes on to show what the remedy at common law was in such cases, and how, by the growth of equity jurisprudence in England, the Court of Chancery has drawn to itself the general superintendence and protective jurisdiction over the persons and properties of infants and compels guardians to account, whether they be chancery, statute, or testamentary guardians, on the same grounds that it does agents, trustees, and others in fiduciary relations.

In the case at bar the respondent Rose sets out at length, in his answer, the opinion of the court upon the appeal of this respondent Shippee from the allowance of said Rose's accounts as her guardian, after said Shippee had arrived at age, she prosecuting the appeal, the result of which was that this court amended the guardian's account in some matters

of form and allowed it, showing the balance due him as hereinbefore stated.

The said Shippee at the rendering of said account was of age, as already stated, and no question was, or is, made, that she was not fully heard as to the said account. The money in litigation in this suit is the proceeds of the same estate or property as to which said account was rendered, and of which said Rose had the management and control as guardian, the real estate having been sold under a mortgage and the mortgage debt having been paid, the surplus represented the interest of the wards in the estate, as the debt represented the interest of creditors, and by the sale the interests of creditors and wards were separated. If the guardian had sold the estate under the power obtained by him from the Court of Probate, he would have reached the result of separating the wards' interest from the creditors' interest, and would have had the surplus in his hands. The counsel for said Shippee seems to question the right of the guardian to sell under such power, without stating clearly the ground for such question; but if anyone questions such right, then the wisdom of the guardian's not selling, and of awaiting the mortgagee's sale, so that no question of title might affect the price, seems to be clear.

The guardian can make no final account until the ward becomes of age, for until then the term is still running as to which the account is to be rendered.

It is not necessary in this case to decide how far, if at all, the allowance of a guardian's final account after the ward has become of age, and as to which allowance the ward has had notice and been heard, is binding upon the ward as evidence of indebtedness of the ward to the guardian in a suit brought to collect such indebtedness out of property acquired by the ward subsequent to such ward's attaining his majority, or as to property that has never been within the scope of the guardianship. In the case at bar the money in question is a part of the property out of which, under some circumstances at least, the guardian might have been paid for his advance, if properly made.

Undoubtedly the strict English rule, followed extensively
in the United States formerly, but to a less extent recently,
limits guardians to the use of the ward's income for his edu-
cation and support, unless the proper court first sanctions
expenditure in excess thereof.   Woerner on Guardianship,
§ 50.   In some States, notably Mississippi and Texas, the
statutes are construed strictly as requiring a *previous* sanc-
tion of the court.   *Boyd* v. *Hawkins*, 60 Miss. 277; *Ex parte*
George, 63 Miss. 143; *Jones* v. *Parker*, 67 Tex. 76.   In most
of the United States, however, the guardian may leave his
conduct to the subsequent approval of the court when he
presents his account, assuming the risk, of course, of obtain-
ing such approval.   The rule as it exists to-day in a majority
of the States is well stated in *Bellamy* v. *Thornton*, 103 Ala.
404, 408, decided in 1893.   Says Head, J., in delivering the
opinion in that case:   "It is a general rule that a guardian,
or other fiduciary, having the control of infants' estates, will
not be permitted to use the *corpus* or principal of the estate
in the support of the wards.   He is, as a general rule, con-
fined to the income.   On application to the proper court,
however, showing urgent need therefor, considering the best
interests of the wards, the court will direct the application
of such portion of the principal to that use as it deems proper,
and, if necessary, will order real estate to be sold for that
purpose.   Our statutes, long ago, provided for such an appro-
priation of both personal and real estate:   'When upon the
representation in writing of the guardian of a minor, it is
made to appear to the satisfaction of the probate judge that
the rents and profits of the estate of the ward are insufficient
for his maintenance and education, the judge of probate may
direct a sale of such portion of the estate, real and personal,
of the ward as may be necessary for that purpose.'   In some
jurisdictions the rule is adhered to that the guardian, to
justify expenditures of the principal and claim re-imburse-
ment, must obtain the proper order in advance; denying him
indemnity although the conditions were such as that the
necessary order would have been granted, if applied for in
advance.   But this court long since adopted the less rigid

42

rule, of ratifying, in such cases, that which would clearly have been previously authorized, at least to the extent of allowing credit to the guardian, upon the settlement of his accounts, for sums paid out for maintenance and education, from the principal of the estate, or beyond the income realized by him." To the same effect see also *Long* v. *Norcom et al.*, 2 Ire. Eq. 354; *Roseborough* v. *Roseborough*, 50 Tenn. 314; *Hobbs* v. *Harlan*, 78 Tenn. 268; *Jarret* v. *Andrews*, 7 Bush. (Ky.) 311; *Karney* ·v. *Vale*, 56 Ind. 542; *Cummins* v. *Cummins*, 29 Ill. 452; *Hyland* v. *Baxter*, 98 N. Y. 610; Sch. Dom. Rel. (4th ed.) § 338, and cases cited.

The statutes of our·State seem to be as broad as those of Alabama, quoted above, and of the other States referred to. Gen. Laws R. I. cap. 196, entitled "Of Guardian and Ward," provides in § 24 that the guardian "may make such application for the sale of the real or personal estate of the ward, or any of it, for better or more advantageous investment, or for the support of his ward and the ward's family, or for any other purpose beneficial to the ward, and for incidental charges." Sections 34, 35, and 37 are as follows:

"SEC. 34. Every guardian of the person shall take suitable charge of the person over whom he shall be appointed guardian, and every guardian of the property of another shall improve such estate frugally and without waste, and shall apply the income and profits thereof, or so much thereof as may be necessary and proper, to the support and maintenance of his ward and the household or family of his ward, if any such there be.

"SEC. 35. If the personal estate and the income of the real estate of any person whose person and estate shall be under guardianship shall not be sufficient to support him and his household or family, the said guardian shall petition the court of probate for liberty to make sale of or to mortgage so much of the real estate of such person, or to make sale of the wood or timber thereon standing and growing, or of the stone in the quarry, or of peat and coal, as may be necessary therefor. If power to mortgage be granted, such mortgage

may contain such powers of sale as are usual in forms of mortgages taken by savings banks in this state.

"SEC. 37. Courts of probate are authorized, in the settlement of the accounts of any guardian by them appointed or approved, to make all reasonable allowances for such sums as the guardian shall, from time to time, have paid for the comfortable support of his ward and family, if any there be, and also a reasonable compensation to the guardian for his services."

Section 22 of the same chapter makes every debt of the ward allowed by the guardian a lien upon the real estate of such ward during his minority and for one year thereafter.

This court has already approved the guardian Rose's account on an appeal taken by the respondent Shippee herself, and found a balance due him, and the Court of Probate has granted said Rose as guardian leave to sell the very real estate, a part of the proceeds of which is the very fund now in litigation, in order to pay the balance due said guardian. As well expressed by Bell, J., in *McGowin v. Remington*, 12 Penn. St. 56, 63, "when once a court of equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute. If the jurisdiction once attaches from the nature of one of the subjects of contest, it may embrace all of them, for equity abhors multiplicity of suits."

In regard to the suggestion of respondent Shippee's counsel that said respondent Rose's claim is entitled to no preference over other creditors she may happen to have, and that said surplus should be paid to her, so that all creditors, if any, might be able to resort to it for the payment of debts, it is enough to say that there is no allegation that there are any other creditors, and that, even if there were, this fund would be first applicable to the payment of the guardian's balance.

The opinion of the court is that the respondent Rose is entitled to the fund, one-half thereof as guardian of the estate of the minor Thaddeus Sprague, and the other half to

reduce *pro tanto* the balance due him as guardian of the said Mabel A. Shippee estate.

*Samuel W. K. Allen,* for complainant.

*Charles J. Arms and Walter B. Vincent,* for claimants.