### Kate Stafford (Mary Duggan, Guardian of John William Stafford, an infant, Appellant), v. William Nathan Stafford, Appellee.

1. APPEAL AND ERROR, § 1169*—*when cases are properly consolidated.* Since an appeal to the circuit court in the matter of the guardianship of a minor child of divorced parents and a motion in such court to modify the decree entered in the divorce suit and to vacate the order for a further hearing in the guardianship matter appealed from the county court both involve the same question and that question only, namely, the custody of the minor, the circuit court properly consolidates such appeal and motion.

2. PARENT AND CHILD, § 3*—*extent of parent's right to custody.* A parent has a right to the custody of his child as against all the world unless he has forfeited that right or the welfare of the child demands that he be deprived of it.

3. PARENT AND CHILD, § 3*—*what parent is entitled to custody of child.* As between the father and mother of a minor the father has the superior right to its custody, all things being equal.

4. DIVORCE, § 159*—*what is effect of decree as to custody of child.* A decree directing the custody of a minor child is exceptional in its character and is always regarded as temporary, and the court retains jurisdiction to review the question at any future time.

5. DIVORCE, § 159*—*when decree as to custody of child may be modified.* One whose wife secured a divorce by default may, after her death, be properly awarded custody of the person of their minor child, which the decree had awarded the wife, though he is a nonresident, the evidence upon such proceeding showing that he is a fit and proper person to have custody of their child.

Appeal from the Circuit Court of Moultrie county; the Hon.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

GEORGE A. SENTEL, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 27, 1920.

W. E. REDMON and E. J. MILLER, for appellant.

J. R. FITZGERALD, J. L. McLAUGHLIN and ELLIOTT BILLMAN, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Kate Stafford, now deceased, and William Nathan Stafford, appellee, were married in Oklahoma, October 29, 1907. One child, John William Stafford, was born of this marriage. In 1913 or 1914, appellee with his wife and child moved to Dalton City, Moultrie county, Illinois, though he still retained his business interests in the buying and selling of horses in the State of Oklahoma. On February 21, 1917, appellee's wife filed her bill for divorce charging appellee therein with extreme and repeated cruelty and habitual drunkenness. Appellee filed an answer to the bill in which he denied all the charges made. In October, 1917, at the September term of the circuit court, while appellee was in Oklahoma, his wife obtained a decree of divorce by default. The decree found that appellee was not a suitable or proper person to have the care and custody of the child, who was then 8 years old, and gave the custody thereof to the complainant, Kate Stafford. The solicitor whom appellee had employed to represent him in the divorce case had enlisted in the United States navy and appellee had not been notified of the hearing of the case. On November 3, 1917, Kate Stafford died and appellee, having been notified of her death, returned to Dalton City to attend her funeral and learned for the first time that she had procured her decree of divorce. He thereupon, at the same term of court at which the decree was entered, filed his motion to vacate the same and

for leave to introduce evidence. On November 9, 1917, Mary Duggan, appellant, and sister of Kate Stafford, filed Kate Stafford's will for probate in the county court and also a petition asking that she be appointed guardian of the estate of the minor child, John William Stafford. No notice was served or summons issued against appellee in these proceedings in the county court, but he, having heard that an attempt was being made to appoint a guardian for his son, appeared with his attorney in the county court and objected to the hearing at that time. The county court thereupon set the hearing for the 17th day of November. Appellee at the time was buying horses and mules for the United States government, and on November 16 received a telegram requiring him to return to Oklahoma in regard to that business. He consulted with his attorney about leaving before the hearing in the county court and was advised that the latter would procure a postponement of the matter for a week or ten days and appellee thereupon returned to Oklahoma. The judge of the county court, however, overruled his motion for a continuance and proceeded with the hearing while appellee was not present. On the morning of the hearing in the county court, after appellee's motion for a continuance had been overruled and it was known that appellee could not be present, appellant amended her petition by inserting in the prayer that she be appointed also guardian of the person of the minor child. The county court entered an order appointing appellant guardian of both the property and the person of the child. Appellee took an appeal from this order to the circuit court where, upon the first hearing, that court affirmed the order of the county court upon the ground that appellee was precluded from asserting his rights as the father of the child because of the divorce decree entered in the divorce case. Thereupon appellee made a motion to modify the decree

entered in the divorce case and also to vacate the order and for a further hearing in the guardianship matter appealed from the county court. As both cases involved but the one question, that of the custody of the minor child; the court upon its own motion consolidated and heard them at the same time upon the same evidence. Much evidence was introduced and at the conclusion of which the court modified the decree in the divorce suit by striking out the finding therein that appellee had been guilty of habitual drunkenness and was not a suitable person to have the care and custody of the child and adjudged that such care and custody of the child be given to appellee. The court also entered an order in regard to the guardianship matter affirming the order of the probate court in so far as it appointed Mary Duggan guardian of the property of the minor child but appointed appellee guardian of his person. From these orders appellant prosecuted the appeal.

Many errors have been assigned and argued by appellant. The first point made is that the circuit court had no authority to consolidate the appeal in the guardianship matter with the motion to modify the decree in the divorce case. The two matters involved the same question and that question only. The court not only had the right to consolidate them but it unquestionably was the proper practice. The next contention is that it was error for the court to give the custody of the child to appellee and thus permit it to be taken out of the State and out of the jurisdiction of the court. A parent has a right to the custody of his child as against all the world unless he has forfeited that right or the welfare of the child demands that he should be deprived of it. As between the father and the mother of a minor child, the father has the superior right to its custody, all things being equal. In the case of *Sullivan v. People*, 224 Ill. 468, it is said: ''The father's right to the custody of his

child is superior to the right of any other person if he is a fit person to have such custody and is so circumstanced that he can provide the necessaries of life and properly maintain and educate the child.'' To the same effect is *Hohenadel v. Steele,* 237 Ill. 229. In the case of *Cormack v. Marshall,* 211 Ill. 519, it is held: ''We regard the rights of the parent as superior to those of any other person, when that parent is a fit person to have the custody of children and is so circumstanced that he can provide the necessaries of life and administer to the requirements of such a charge. The mere fact that some other person may have more money or property in any form is not one that appeals to us. The divine injunction to multiply and replenish the species was not confined to the rich, nor was it intended that the poor should beget the children and the rich should rear them. To recognize such doctrine would be little less than monstrous, and would be in utter disregard of those natural instincts of love and care and interest found in the breast of the parent. And while it is said in the books that the interests of the child is the controlling question, it is not meant thereby to say that the financial interests, only, of the child shall predominate. The courts cannot be unmindful of the great fact standing prominently in all our biographies and histories, that the greater number of the men and women of real worth in our nation and throughout the world have come up under circumstances that required a struggle upon the part of their parents and themselves to make themselves what they were. While the financial interests of the child are not to be disregarded, they are, likewise, not to be controlling. Neither the day laborer nor the minister of the gospel is to be discriminated against in consideration of this one of the highest natural rights with which man is endowed, merely because of the wealth of those who are contending against him. Until it becomes contrary to law that people in poor

or moderate circumstances shall produce children, the courts must recognize and enforce the sacred rights and the legal rights they have to their custody, control and society." Section 4, ch. 64, Rev. St. (J. & A. ¶ 6001) provides as follows: "The guardian of a minor shall have, under the direction of the court, the custody, nurture and tuition of his ward, and the care and management of his estate; but the parents of the minor, if living, and in case of the death of either of the parents, the surviving parent, they being respectively competent to transact their own business, and fit persons, shall be entitled to the custody of the person of the minor and the direction of his education. The parents of a minor shall have equal powers, rights, and duties concerning the minor. In case the father and mother live apart, the court may, for good reasons, award the custody and education of the minor to either parent or to some other person." Section 6 of ch. 64 (J. & A. ¶ 6003) is as follows: "The guardianship of the infant's estate may be appointed to one, and the custody and tuition of the minor to another." A decree directing the custody of a minor child is exceptional in its character and is always regarded as temporary. *Hohenadel v. Steele, supra.* The original decree of divorce which found that appellee was not a fit person to have the care and custody of the child in question was entered upon a hearing of the case wherein appellee had been defaulted and had made no defense. The decree, in so far as it disposed of the custody of the child, was but temporary, and the court retained jurisdiction to review that question at any time in the future. It was proper for the court to again receive evidence and determine the fitness of appellee to have the custody of the child. After a lengthy hearing upon this question the judgment of the court was that appellee was a fit and proper person to have the custody of his child, and his finding is warranted by the evidence. The

mother of the child is dead and appellee is the surviving parent. By the mother's will some property is bequeathed to the child. Appellee does not seek to be appointed guardian of the estate of the child and waived in open court any such right. He only seeks the custody of the person of the minor. It is insisted that this cannot be done because appellee is a resident of Oklahoma and that it is unlawful to appoint one a guardian of a minor child who is a nonresident and out of the jurisdiction of the court. If it be conceded that there may in some cases be special and controlling circumstances which would make it inadvisable to appoint a surviving parent, who is a nonresident, guardian of the person of his own minor child, no such circumstances appear in this case. Appellee is the guardian of his child by the law of nature. He has been found a fit person to have its care and custody. To hold that the surviving parent of a minor child, under the circumstances appearing in this case, could not change his residence from one State to another without sacrificing the custody of such child, would be unconscionable, without reason, and contrary to all precepts of humanity and civilization. The rule is well stated in 21 Cyc. 63, where it is said: "A guardian by nature, or a testamentary guardian, may in good faith change his ward's domicile, either from one State to another State, or from one county to another county in the same State. As respects natural guardians, this doctrine amounts to no more than that the domicile of the parent is the domicile of the child. The exercise of this right, however, is subject to the power of the court to prevent an improper removal of an infant out of the State, although it will be a very extreme or special case which would induce the court to interfere with the parent's natural rights in this respect." No reason appears in the record in this case why appellee should not have the custody of his own child

as its surviving parent. It was held in the case of *Cummins v. Cummins*, 29 Ill. 452: "When the testator appointed defendant guardian of his children, knowing that he resided permanently in Indiana, it may well be inferred that he expected that his brother would remove the children there. Without that, he could not expect that the guardian could take proper care of the wards."

Other contentions, mostly of a technical nature, have been raised by appellant but are all subversive to the controlling question as to whether appellee as a surviving parent had the right to the custody of his minor son, and on that question the decree and order of the circuit court is right and is affirmed.

*Affirmed.*