(No. 13641.—Judgment affirmed.)

KATE STAFFORD *vs.* WILLIAM NATHAN STAFFORD, Defendant in Error.—(MARY DUGGAN, Plaintiff in Error.)

*Opinion filed October 22, 1921.*

1. DIVORCE—*when court continues to have jurisdiction over custody of child.* A court which acquires jurisdiction of a proceeding for a divorce has jurisdiction to settle the question of the custody of a child of the complainant and after the decree is entered will continue to have the right to reconsider the question upon proper application and to make changes in its order when warranted by the evidence, and the original jurisdiction acquired in the divorce proceeding will not be lost where the defendant moves to open up the decree at the same term it was entered and such motion is continued from time to time.

2. SAME—*court may appoint a guardian for the property of a child and yet award custody of the child to its father.* The circuit court in a proceeding for a divorce may appoint a guardian for the property of the child of the complainant, who has died after the entry of the decree, and at the same time give to the father the care, custody, control and education of the child, provided the evidence justifies such order.

3. SAME—*circuit court may consolidate appeal from appointment of guardian by county court with proceeding to modify divorce decree.* On appeal from an order of the county court appointing a guardian for a minor child of a complainant, who has died since the entry of a decree granting her a divorce, the circuit

court may of its own motion consolidate the appeal with a pending motion to open up the divorce decree and modify the order therein as to the custody of the child, where the principal question in each case is the same and involves the same evidence.

4. SAME—*verdict of jury involving question of custody of child is merely advisory.* In a proceeding for a divorce the parties are entitled to a jury, and upon all issues affecting the right of divorce the verdict of the jury is binding to the extent that it cannot be set aside unless it is manifestly against the weight of the evidence, but upon the question of the custody of the child the verdict is merely advisory.

5. SAME—*when father does not forfeit right to custody of child.* A father is not disqualified from having the care, control and education of his child because of the fact that he has occasionally taken a drink of intoxicating liquor, and where the complainant in a proceeding for divorce has died after the entry of the decree, the defendant, upon a proper showing, is entitled to a modification of the decree so as to give the custody of the child to him instead of the wife's sister, even though the sister may be more able, financially, to care for the child.

6. SAME—*father will not be denied the right to custody of child merely because he is a non-resident.* Where a wife dies after obtaining a decree for divorce and there is a controversy between the defendant and his wife's sister as to the custody of his child, the father will not be denied his right to such custody merely because he is a non-resident and the child has property in Illinois, but the court may appoint said sister the guardian of the child's property and give the father the care and custody of the child. (*Miner v. Miner,* 11 Ill. 43, distinguished.)

7. SAME—*domicile of the parent is the domicile of the child.* Where the mother is dead, the domicile of a child, who has been living with her apart from the father, changes to the domicile of the father, as the father is the natural guardian of the child; and a guardian by nature, or a testamentary guardian, may in good faith change his ward's domicile from one State to another or from one county to another.

8. SAME—*after mother's death father may have custody of child although divorce was for his fault.* Although a divorce is granted for the husband's fault and the custody of the child is given to the wife, the husband, after the wife's death, is entitled to preference over another person who has no natural right to the child, provided the evidence shows that he is a competent person to have the custody of his child.

9. SAME—*when divorce decree prevents testamentary disposition of custody of child.* Where a wife dies after obtaining a decree for divorce and the husband by a proper motion continues the jurisdiction of the court so as to modify the decree as to the custody of the child, the final decree awarding such custody to the father divests all right which the complainant may have had to make a testamentary provision as to the disposition of the child.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Moultrie county; the Hon. GEORGE A. SENTEL, Judge, presiding.

E. J. MILLER, W. E. REDMON, and C. R. PATTERSON, for plaintiff in error.

JOHN R. FITZGERALD, and McLAUGHLIN & BILLMAN, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

William Nathan Stafford, defendant in error, and Kate Duggan, now deceased, were married in Oklahoma on October 29, 1907. John William Stafford was born to this union on August 28, 1908, and in 1913 defendant in error, with his wife and child, moved to Dalton City, Illinois, the former home of his wife. He retained some business interests in Oklahoma, and on February 21, 1917, while he was absent in Oklahoma on business, his wife filed in the circuit court of Moultrie county her bill for divorce and the custody of their child, charging that he was guilty of extreme and repeated cruelty to her, had been guilty of habitual drunkenness for more than two years last past, and was wholly unfit to have the care, custody and education of the child. He employed an attorney at Dalton City and answered the bill, specifically denying all the charges therein contained, and the cause was continued to the September term, 1917. Defendant in error's attorney enlisted in the navy before the September term of court and notified Staf-

ford of that fact. He employed another attorney in Oklahoma, but the cause was tried at the September term during his absence and he was found guilty of extreme and repeated cruelty and of habitual drunkenness and that he was not a suitable person to have the care and custody of the minor child, and a decree granting the divorce was entered and the custody of the child awarded to the mother, who died November 3, 1917, leaving a last will and testament, by which she bequeathed and devised all her property to her minor son. The will provided that the court should appoint some suitable person who should have control of her estate willed to her son until he arrived at the age of twenty-one years and out of the income of the estate support, maintain and educate him, and that such person should look after her son and satisfy himself that any money paid over to anyone for his use and benefit should be used for the purpose intended, and should from time to time, if practicable, visit her son at the expense of her estate and satisfy himself that he was properly taken care of and educated.

Defendant in error was informed of the death of his wife and came from Oklahoma to her funeral and there for the first time learned that she had obtained a divorce from him and the custody of the child. On December 7, 1917, at the September term, 1917, he filed his motion in the circuit court, supported by affidavit, to open up the decree for divorce and the custody of the child and for leave to introduce further testimony. On November 9, 1917, Mary Duggan, plaintiff in error, the sister of Kate Stafford, filed her petition in the county court of said county asking for the appointment of herself as the guardian of said child. Defendant in error received no official notice but on said date appeared in person with his attorney and objected to the petitioner being appointed guardian, and the matter was set for hearing on November 17, 1917, eight days later. Before the day of the hearing defendant in error was called back to Oklahoma on urgent business, and, although his

attorney applied for a further continuance, that cause was heard by the county court and Mary Duggan was appointed guardian of the person and property of the child, the petition being amended on the day of the hearing to show that the petitioner asked to be appointed guardian of the person as well as of the property of the child. The guardian was required to give bond in the sum of $30,000. The property of the ward was inventoried at a valuation of $19,200. Defendant in error perfected his appeal to the circuit court of said county from the order of the county court appointing such guardian and a trial *de novo* was had March 8, 1919, and the circuit court confirmed the order of the county court and appointed Mary Duggan as guardian of the estate and person of said minor, the order and judgment of the court being based largely upon the decree and finding of the circuit court in the divorce proceedings, the decree at that time being in full force and effect and unmodified. At the same March term defendant in error moved to open up this latter order and judgment and for leave to introduce further testimony therein, and in support of the motion he alleged that the hearing of his motion to open up the decree for divorce and to have the same modified was pending for hearing in the circuit court for May 10, 1919. The motion was granted and the further hearings of the appeal case and of the motion to modify the decree in the divorce suit were consolidated of the court's own motion and for its convenience in properly disposing of both matters at one and the same time. On May 10, 1919, both causes were heard by the circuit court on the evidence and the court modified the decree of the circuit court, striking therefrom the findings that the defendant was guilty of habitual drunkenness and was an unfit person to have the care and education of the child and the order awarding the care and custody of such child to Kate Stafford, and inserting in lieu thereof the findings that he was not guilty of habitual drunkenness and was not given to excessive use of intoxicants but is a sober,

industrious citizen and a kind and indulgent father, having great affection for his son, and that he is a fit person to have the care, custody, control and education of his son and has been guilty of no act or conduct to forfeit his right as a father; and further modified the decree so as to provide that he should have the care, custody, control and education of his son, but left the decree for divorce for extreme and repeated cruelty still standing on that ground, alone. In the appeal case in the matter of the appointment of a guardian, Mary Duggan was found a fit person to be guardian of the property of the minor and was appointed guardian of his property, only. Mary Duggan excepted and perfected her appeal to the Appellate Court for the Third District, and that court affirmed the decree of the circuit court, and also the order and judgment in the appeal case, at its April term, 1920. This court granted a writ of *certiorari* for further review of the record on error.

The main and controlling question on this record is whether or not defendant in error, the father, is a fit and suitable person to have the care, custody, control and education of his child. This question arises between him and Mary Duggan, the plaintiff in error and aunt of the child. The question as originally before the circuit court in the divorce proceedings was between defendant in error and his wife, Kate Stafford, the child's mother. That court was the first court to obtain jurisdiction to settle the question of the custody of the child, and there can be no sort of question of the right and jurisdiction of the court to dispose of the custody of the child in the divorce proceedings. That court not only had the right and the jurisdiction to settle the question in the first instance, but it continued to have the right to reconsider the question upon proper application and to make changes in its order as to the custody of the child whenever new conditions warranted it under the evidence produced. This right to modify the decree as to the custody of the minor child from time to time, as shall appear

reasonable and proper, is expressly given by section 18 of our Divorce act, which has been sustained frequently by the decisions of this court. (Hurd's Stat. 1917, p. 1076; *Draper* v. *Draper,* 68 Ill. 17.) "County courts in their respective counties may, when it shall appear necessary or convenient, appoint guardians to minors, inhabitants of or residents in the same county, and to such as reside out of this State and have an estate within the same, in the county where the real estate or some part thereof may lie; or if he has no real estate, then in any county where he may have personal property." (Hurd's Stat. 1917, chap. 64, sec. 2.) By section 4 of this act it is provided that the guardian of a minor shall have, under the direction of the court, the custody, nurture and tuition of his ward and the care and management of his estate; but the parents of the minor, if living, and in the case of the death of either, the surviving parent, they being respectively competent to transact their own business and fit persons, shall be entitled to the custody of the child and the direction of its education. Section 6 of the act expressly provides that "the guardianship of the infant's estate may be appointed to one, and the custody and tuition of the minor to another." It was therefore competent for the county court to appoint Mary Duggan guardian of the property of the minor and at the same time by its order give the father the custody of the person of the child and the direction of its education had it chosen to do so and such order had been warranted by the evidence. It was entirely competent for the circuit court, either in the appeal case or in the divorce case, (which were both heard by it at the same time,) to make the order appointing Mary Duggan guardian of the property of the child and at the same time award the care, custody, control and education of the child to the defendant in error, as it did do, if the evidence before it justified such order. The circuit court had not lost jurisdiction of the order in the divorce proceedings, as the motion of the defendant in error to open up that

judgment was made at the same term of court in which the divorce decree was entered, and such motion was continued from time to time until its final disposition, May 10, 1919.

Plaintiff in error makes the point in this court that the appeal bond in the appeal case was not filed in time and that for that reason the circuit court had no jurisdiction of the appeal. The appeal was twice heard before the circuit court and no such objection was made by plaintiff in error at either hearing, and therefore no such question can properly arise on this record. (*Grier* v. *Cable,* 159 Ill. 29.) It was also perfectly proper and competent for the court, of its own motion, to consolidate for one hearing the case on the appeal and the motion to modify the order in the divorce case. The main question in each case was practically one and the same, and the greater part of all of the evidence in one case was admissible on the main issue in the other case. It was a time saver for the court and also for the parties, and neither party can possibly be prejudiced by such action, as the court announced that it would hear all of the evidence in both cases and consider the evidence in each case properly bearing on the issues therein.

We hold upon the question whether or not this court is bound by the finding of the facts by the Appellate Court that we are not so bound. The divorce proceeding is regarded as a chancery proceeding. In such a case upon the simple question of divorce the parties are entitled to a jury, and upon all the issues affecting the right of divorce the verdict of the jury is not advisory, merely, but is binding upon the lower court and consequently binding upon the Appellate Court and this court to the extent that it cannot be set aside unless it is manifestly against the weight of the evidence. Upon the question of separate maintenance or of the custody of the child the rule is the other way,—that is, a verdict of the jury would only be advisory, even though the questions arose in the same suit and upon an issue that

would affect the right to a divorce were that question alone to be decided. *Berg* v. *Berg,* 223 Ill. 209.

The only fact alleged against the competency and fitness of the defendant in error to have the custody, care, control and education of his child is the alleged fact that he is an habitual drunkard. The evidence in the record is overwhelmingly against the contention that the defendant in error is an habitual drunkard and an unfit person to have the care, custody, control and education of his child. Five of his neighbors and citizens, four of whom had known him intimately for fifteen years in Oklahoma and the other of whom had known him intimately for eleven years, testified positively and unequivocally that they were acquainted with him and had lived near him and done business with him and were acquainted with the people with whom he associated and did business. They further positively and unequivocally testified that they were acquainted with his general reputation in the vicinity where he lived as to being a sober, industrious and law-abiding citizen and that his reputation is good; also, that they personally knew that he was not a drunkard and not addicted to intemperance; that they never saw him drunk but state that it is a fact that he occasionally took a drink of intoxicants; that for several years he had been in the stock business and in the last three years had made good money in buying and selling horses and mules for our allies and for the government; that he is devoted to the child and has always provided well for his family; that his credit has always been good and that he has at all times paid his debts, and that he is a fit and suitable person to have the custody, control and education of his son. One of the witnesses was a banker at Beaver, Oklahoma, and had resided in the same vicinity with the defendant in error, formerly as a neighbor and farmer in the country and latterly as a neighbor and banker in the same town. The second witness was a merchant of the same town and a neighbor, who saw him several times a week.

The third was a stock raiser, having the same intimate
acquaintance with him.   The fourth was his family physi-
cian, of the same intimate acquaintance with him and his
wife; and the fifth was an abstracter.   The testimony of
these five witnesses is corroborated by the depositions of
another set of witnesses from Oklahoma, ten in number,
who appear to be substantial, reliable business men of vari-
ous callings.   Defendant in error was further supported in
this particular by twelve apparently substantial and reliable
citizens of Dalton City, Illinois, who knew him intimately
while he lived in that city, which is also the residence of
plaintiff in error and was the former residence of his wife.
Several of the witnesses were relatives of the plaintiff in
error.

Opposed to defendant in error's evidence plaintiff in er-
ror only produced two witnesses who testified contrary to
the witnesses of the defendant in error.   The first was
Henry Nichols, who testified, in substance, that the reputa-
tion of the defendant in error is that he is "addicted to the
use of intoxicating liquor."   On cross-examination he stated
by way of explanation that when a man drinks intoxicating
liquor he is addicted to the use of it.   He further testified
that he considered that everybody who drinks is wrong;
that the people consider Stafford a jolly good fellow, and
that about the worst witness can say against him is that he
takes too much liquor; that he would not state that he was
unfit to have the custody of his child.   The other witness
was George H. Wright, who testified that he is a teetotaler
and that he had seen defendant in error drunk more times
than he had fingers.   He also stated that his reputation as
a drinking man was bad and that he is what is known as
a confirmed drunkard.   Although questioned repeatedly he
could not and did not state any time or place that he had
ever seen him drunk.   He also stated that he did not think
a man who drinks is capable of taking care of his children.
He further testified that a man who had taken a drink of

intoxicating liquor would be less competent to raise a child than if he had not taken a drink, and that his competency would be lessened as the amount and frequency of the drinking increased.

The sum and substance of our conclusions on the evidence in this record is that the evidence does not show that defendant in error is an habitual drunkard or that he has been guilty of drinking liquor to excess at any period of time but that he has for fifteen years been a man who has occasionally taken a drink of intoxicants. The evidence also shows that he has abstained from drinking almost entirely for the last two years. There is not a blemish on his character outside of the charge of taking an occasional drink, and there is no contention in this record to the contrary. This court would not feel warranted in holding that a man is utterly disqualified from having the care, control and education of his children because of the fact that he has occasionally taken a drink of intoxicating liquor. If we were to adhere to that rule it would disqualify a very large per cent of men in this country in all of the occupations and professions in which men are engaged. Taking a drink of intoxicants in the presence of a child would be setting a bad example for it. So would smoking or chewing tobacco likewise be a bad example. It may be admitted that the occasional taking of a drink of liquor or the smoking or chewing of tobacco is not a special aid to a man or a recommendation, but we apprehend that no court would undertake to hold, as a matter of law, that either or both would absolutely disqualify a man from having the custody of his child or be considered sufficient ground for giving the custody of his child to another who has no such habit or any other bad habit. Under the evidence in the record defendant in error is entitled to the custody, care, control and education of his son as against plaintiff in error. He is its father and has the natural right to have such custody. As against him the plaintiff in error has no right whatever, under the

law, to the custody of the child, no more than an absolute stranger, unless it can be shown that he has in some way forfeited his right.    Under the evidence he is strongly attached to the child and has always treated it kindly and has been a good provider for it and his wife.    As father of the child he has the right to its custody as against the world, because there is no showing that he has forfeited such natural right.    *Sullivan* v. *People,* 224 Ill. 468; *Carmack* v. *Marshall,* 211 id. 519; *People* v. *Turner,* 55 id. 280; 21 Cyc. 34.

Much stress is laid upon the fact that defendant in error is shown to have had no property in his name at one time before the divorce proceedings were begun and while he and his wife were living in Oklahoma.    Defendant in error admits that fact and has not sought to explain it.    He has at no time made any claim in this litigation for any of the property of his wife.    He has frankly declared that he wants nothing except his child and is willing to support it, and he has shown that he is able to support it.    He has accumulated about $4000 worth of property since the period of time referred to when he had nothing.    The explanation of his having no property at that time, if that fact is seriously to be considered, is that he had transferred it all to his wife.    It does appear from the testimony of witnesses that both he and his wife homesteaded and each owned 160 acres of land in Oklahoma, and that he transferred his 160 acres to her and that she owned it all at her death.    There is no evidence that he could not and did not accumulate property. It certainly ought not to be taken against him in this suit that his wife was the benefactor of his accumulations before her death and that he has not seen fit to contest with his child for any of the property in his wife's name.    The remainder of the property of which she died seized she inherited from her mother.    Neither is there anything in the claim that the defendant in error has interfered with Mary Duggan in the collection of the rents from his wife's estate

in Oklahoma. On the contrary, it positively appears that he paid $25 of the rent to her or for her that the tenant had not paid and relied on the tenant to re-pay him, when he was under no obligation to do so. We may add that the mere fact that plaintiff in error may have more money or property of every form than defendant in error, or might be more thrifty in accumulating property of every form than defendant in error, is no legal reason for depriving him of the custody of his child.

It is also adverted to as a reason for giving the custody of the child to Mary Duggan that the child has expressed a preference for remaining with her. The undisputed testimony of the plaintiff in error is that just before returning to Oklahoma after attendance at his wife's funeral defendant in error bought a trunk for his child and made arrangements to take the child back with him, to which there was no objection. At the trial his son testified that he remembered when he lived with his father and mother in Oklahoma; that his father always treated him kindly and bought nice things for him; that he bought the trunk for him; that his father talked to him about going with him, but that he did not remember what he did tell his father then; that he has talked to his aunt sometimes about going with his father; that she talked to him two or three times about it and thought he was better off by staying with her as she would treat him better; that he believed what she told him; that he has written several letters to his father since that time and that his father has written several to him; that he loves his father and loves his aunt Mary and wants to live with her, and that he likes to go to school where he now goes and to play with the children there. In a very doubtful case the wish of the child is to be considered and given weight, but we do not think that the wish of the child in this case should have any great weight in determining the question of custody. The testimony of the child is that he may be equally satisfied to remain with his father after

he goes with him, and that he does not have any serious objection to going with his father and will not be seriously grieved by being separated from his aunt.

It is argued that defendant in error is a resident of Oklahoma and that it is against the policy of the law of this State and the holdings of this court that the father should be allowed to take his child to his home out of the jurisdiction and control of this court. The cases of *Miner* v. *Miner,* 11 Ill. 43, *Alford* v. *Bennett,* 279 id. 375, and other such cases, are referred to as authority for this statement. In the *Miner case* there was a question between the father and mother as to the custody of their child, and this court held that when the aid of the court is thus invoked it will not permit the one or the other to remove the child beyond its jurisdiction. The reason for the rule in that case was that the parties both had a natural right to the custody of the child, and neither would be allowed to entirely deprive the other of his or her parental right of seeing and visiting his child. In this case there is no reason for such a rule. Plaintiff in·error has no natural right to the custody of the child or to visit it. Defendant in error has the natural and legal right to the custody of the child and to take it to his own domicile. No court, as against his right, ought to say that it will retain jurisdiction of the child and deny him its custody simply because of the fact that the child has property in this State in the hands of the guardian of its property. To deny the right of the father to his child under such circumstances would be to deny him a civil and legal right without any just ground whatever. The thought of a father having his legal and civil right to the possession of his child thus denied by a court would be simply intolerable. The right of this child to its property can be just as legally and just as effectually guarded by this court if the child lives with its father in Oklahoma as it can if it lived in Illinois. No legal or natural right of Mary Duggan will be taken away from her by giving

the custody of the child to its father. None of the legal or political rights of the child will be taken away from it by allowing its father to take it home with him. Its father's domicile is now its domicile, the mother being dead. A guardian by nature, or a testamentary guardian, may in good faith change his ward's domicile from one State to another or from one county to another county in the same State. As respects natural guardians, this doctrine amounts to no more than that the domicile of the parent is the domicile of the child. (21 Cyc. 63; *Cummins* v. *Cummins,* 29 Ill. 452; *Mercien* v. *People,* 25 Wend. 64; *Wood* v. *Wood,* 28 Am. Dec. 451; *In re Benton,* 92 Iowa, 202; *Lamar* v. *Micou,* 5 Sup. Ct. 221.) An examination of these authorities will show that the power of a court to prevent the removal of an infant out of the State by its natural or testamentary guardian should be exercised only in extreme or special cases, where such interference is necessary to prevent the guardian from working a fraud upon the infant by depriving it of the enjoyment of its full right of succession to property belonging to it. No such wrong can possibly be inflicted upon the child in question by his father, as the property is to remain in the custody of the local guardian and subject to the jurisdiction of the county court to see to its proper distribution. We are mindful of the fact that the interests of this child should be controlling in this case. Defendant in error has secured or arranged for a good home for his child in Oklahoma, where it will have the advantages of good, Christian influence and the benefit of good schools and where he can be with it and personally look after it, and it is our conclusion, taking all matters into consideration, that it is for the best interest of the child to be in the custody of its father. *Alford* v. *Bennett, supra,* above cited by plaintiff in error, has no application to this case.

Decisions of this court have been cited by plaintiff in error to the effect that where a divorce has been granted

against the father for his fault and he has thus caused the breaking up of the family, the mother, the other natural parent, will be decreed the custody of the child when she is shown to be a proper person for such custody. That rule does not go to the extent of giving a preference over the father to another person who has not the natural right to the child, after the mother has died, where the evidence shows that the father is a competent and fit person to have the custody of his child.

It is contended that defendant in error is guilty of perjury because of the fact that he stated that in Judge Meese's family, where he had arranged to board with his child, there were only two boys and that they were grown and were away from home, having enlisted for the war. We do not think the record warrants any such charge against him. He voluntarily produced Judge Meese as a witness in this case for him. Judge Meese did say that he had some boys in his family of the ages of seven years and upward, but he also said that these boys were "working out" and his two oldest boys were enlisted in the army. The testimony also discloses that defendant in error made his arrangements with Mrs. Meese and that Meese sent him to his wife for that purpose. Her testimony is not in the record and there is no showing in the record that he did not have that understanding with her. The fact that the small boys were away from home at work is no doubt the reason for defendant in error thinking that there were no small boys at home. We are satisfied defendant in error did not make any intentional mis-statement of the facts, as he afterwards introduced Judge Meese to prove the very facts he had stated concerning his arrangement to have his child make his home there. It clearly appears that the children of Judge Meese are unobjectionable companions for defendant in error's child.

We have already recited the substance of Kate Stafford's will with reference to the disposition of this child.

It contains no testamentary disposition of the child. It does not undertake to give the custody of the child to Mary Duggan, but merely asks the county court to appoint a guardian for the child. Besides, the final decree of the circuit court awarding the custody of the child to defendant in error divested all right of Kate Stafford to make a testamentary disposition of the child. That decree as modified and as affirmed by the Appellate Court vested the right of the custody in the father, and neither Mary Duggan nor anyone else can assert any legal authority over the child by virtue of the will. In fact, the will of Kate Stafford seems to contemplate that the custody of her child would go to her husband. Defendant in error claims that Kate Stafford told him, in substance, that if she died she wanted him to have the custody of the child, as he would treat it better than anyone else. Plaintiff in error claims that she told her the same thing, in substance, just before she died. Whatever may be the facts in that regard, the wish or desire of Kate Stafford can have no positive significance in this case, as she did not have the right, under the divorce decree as it now stands, to dispose of her child. Plaintiff in error has established by this record that she is an entirely fit and competent person to have the care and custody of the child. There is no ground or claim for any other view of the matter so far as the question of her personal fitness is concerned, but the natural and legal right to the custody of the child belongs to the father and he has done nothing to forfeit it.

By all the competent evidence in the record we think it clearly appears that the circuit court and the Appellate Court have correctly and properly disposed of the questions involved in this case, and the judgment of the Appellate Court ought to be, and is, affirmed accordingly.

*Judgment affirmed.*